IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**NATIONWIDE MUTUAL INSURANCE**
**COMPANY**

       **Plaintiff,**

v.                                                  CV 1:10-1134-RBP

**SCOTT THOMAS; KENNETH GENE**
**GOODEN, JR. and LORI TOUART**
**THOMAS**

        **Defendants.**

FINDINGS OF FACT
AND
PARTIAL CONCLUSIONS OF LAW

Findings of Fact

This action arises out of a dispute between the plaintiff and the defendants as to insurance coverage. The Thomas defendants were injured as the result of an automobile accident which occurred at approximately 5:30 a.m. on October 12, 2009. Lori Thomas was the driver of one of the vehicles. The Thomas defendants have recovered a judgment in state court against defendant Gooden, the driver of the other vehicle. The dispute involves whether the Thomas defendants are entitled to recover from the plaintiff under the provisions of a Nationwide automobile liability insurance policy naming Gooden as an insured. The subject policy was issued on January 18, 2008, based on an application dated and submitted by Gooden on December 21, 2007.[1]

---

[1] For several years prior to December 2007, Gooden had one vehicle insured by the plaintiff. His liability coverage was $25,000/$50,000. On January 18, 2008 a new policy added another vehicle and increased the liability coverage to $300,000/$300,000. Nationwide also issued a new one million dollar umbrella policy to Gooden at the same time. There was some confusion at trial as to whether Gooden had been a Nationwide insured for 9 years prior to December 2007. Gooden says he began this relationship in 2003. The confusion likely arises because the Thomas attorney read "9 [6 month] terms" as 9 years.

The pertinent provisions in the subject policy and the application are the following:

POLICY

"1. Coverage Exclusions . . . .

This coverage does not apply to: Use of any motor vehicle to carry persons or property for a fee."

"2. General Policy Conditions . . . .

We, you, and anyone insured by this policy must do certain things in order for the provisions of the policy to apply. The following are policy conditions:

1. HOW YOUR POLICY MAY BE *CHANGED* . . . .

1(e) The policyholder has a duty to notify us as soon as possible of any change *which may affect the premium or the risk under this policy* . . . . This includes, but is not limited to, changes in . . . . (3) use of the insured vehicles." (Emphasis added)

DECEMBER 21, 2007 APPLICATION

"I certify that the vehicles listed for coverage on this policy are not used for commercial use, the pick up and delivery of goods or people, which includes but is not limited to pizza, mail, newspapers taxi, debris/snow removal, for hire or fee."[2]

At the time of the December 21, 2007 application, defendant Gooden's sole employment was with a Honda supplier named New South Express. He was not delivering newspapers or otherwise engaging in any commercial activity other than his job with New South. The December 21, 2007 application and attachments to it were the only documents signed by Gooden prior to the date of the accident. Gooden did not make any misrepresentations in the application or its

---

[2] Note that the above-stated notification provision is not as specific as that in the application.

attachments.[3]

In February 2009, while continuing to work full time for New South Express, Gooden began the part-time job of delivering the Talladega Daily or Sylacauga Daily newspaper(s) about one to two hours per night. Neither Gooden nor his wife, another named insured, ever notified Nationwide that he had begun delivering newspapers.

The subject policy came up for further renewal on about July 18, 2009.[4] The only renewal notice which the plaintiff sent to Gooden was basically a statement of the premium due.[5] At the time of the July 18, 2009 renewal, Gooden was still delivering the Talladega/Sylacauga newspapers and was still working full-time for New South Express.

In August 2009, Gooden began delivering newspapers for The Birmingham News. At about the same time, he terminated his employment with New South Express, and the Birmingham News delivery became his only job. No notice of the Birmingham News newspaper delivery was given to Nationwide prior to the accident.

On October 9, 2009, Gooden's second child was born. There is a reasonable inference that this event affected Gooden's normal newspaper delivery situation. This event, coupled with Gooden's not being able to remember anything from Sunday night October 11, 2009 to Wednesday October 14, 2009, creates difficulty with regard to determining the circumstances immediately prior to the accident. Among the circumstances were:

---

[3] The plaintiff does not claim that Gooden misrepresented anything in the December 21, 2007 application. The court concludes that the "application" has no "application" to this case.

[4] The third renewal after the January 18, 2008 issuance.

[5] There is no evidence that Nationwide ever sent Gooden any renewal notice or other document regarding use of the automobile after the January 2008 issuance of the policy and prior to the accident. Any such language that Nationwide ever gave or sent to Gooden was included only in the application and the policy issued in January 2008.

(1) Gooden planned on October 11, 2009 to pick his wife up at the hospital on the morning of October 12, 2009.

(2) Unlike the usual circumstance when his wife or someone else stayed with Gooden's older child and took him to day care at 6:00 a.m., Gooden carried the child with him on October 12, 2009 when he was delivering newspapers and the child was with Gooden at the time of the accident. This change *may* have affected the timing of the deliveries. Gooden has no explanation as to why he would have been at the location of the accident at the time of the accident other than in connection with newspaper deliveries.

The accident occurred on Houston Road. Ms. Thomas was heading north on Houston Road and Gooden was heading south on Houston Road, both near the intersection of Houston Road and McCedar Road. Ms. Thomas testified that the accident occurred south of the McCedar Road intersection.

There is no direct evidence as to why Gooden was on the wrong side of the road as he approached Ms. Thomas' vehicle. A possible inference is that he had started to turn left to go to Sparrow Lane where he had customers.

At the time of the accident, Gooden was headed in a direction away from both his home and the day care center his child attended.

The parties have agreed that the only factual dispute is whether Gooden was still in the process of delivering newspapers at the time of the accident. There is no reasonable inference other than that he was still in the process of delivering newspapers or that he had completed the

delivery and was proceeding back home, to the day care center, or to another location.[6]  There is no question that Houston Road and Sparrow Lane were on Gooden's delivery route.

On October 13, 2009, a representative of Nationwide took a photograph of the inside of Gooden's vehicle which revealed approximately 15 Birmingham News newspapers dated October 12, 2009.  Gooden  normally carried 129 newspapers plus some excess newspapers to cover unexpected circumstances.  Gooden testified without rebuttal that he could not think of any reason he would have been out at 5:30 a.m. on October 12, 2009 other than in connection with delivering newspapers.  There was no evidence at trial as to the location of the hospital. The newspapers were picked up at a location north of the insured's house and, contrary to some suggestions in argument at trial, deliveries began substantially north of McCedar Road.

The insured's Birmingham News supervisor testified that if the insured was in the area of the accident he would have completed his delivery route.  This is perhaps inconsistent with the fact of there being customers on Houston Road and Sparrow Lane.  Gooden testified that he normally would have been to Houston Road by 1:00 to 1:30 a.m. and that he knew of no reason for him to be there at 5:30 a.m. and had "no idea" why he was.  Gooden's supervisor offered testimony that she did not receive any calls about missed deliveries on October 12 and that would normally occur if there had been such misses. Gooden testified that he was usually back home by 5:30 a.m.  Gooden picked up his newspapers at a spot north of his house.  The accident location was substantially south of his house. Gooden has testified, and the court believes, that he never read the subject policy. Gooden was paid by the Birmingham News based upon the number of

---

[6] This creates a further issue as to whether proceeding from where he made his last delivery to his home or another location would be considered part of the delivery process.

newspapers he delivered regardless of the location of the customers.

Positions of the Parties

Plaintiff's Positions

1. There is no coverage because the policy provides that coverage is excluded because the policy states, "This coverage does not apply to: Use of any motor vehicle to carry persons or property for a fee."

2. There is no coverage because the insured did not notify the plaintiff "as soon as possible of any change which may affect the premium or risk under this policy. This includes, but is not limited to, changes in use of the insured vehicles." The plaintiff makes this claim with regard to the insured's failure to notify the plaintiff prior to the July 2009 renewal of the policy that he was delivering papers for the Talladega/Sylacauga newspapers. The plaintiff also makes this claim with regard to the failure of the insured to notify the plaintiff that the insured had begun delivering newspapers for the Birmingham News after the last renewal. Any such claim as to the Birmingham News lacks merit because this delivery began after the July 2009 renewal and before the next scheduled renewal. The plaintiff has acknowledged that the July 2009 renewal could not be cancelled or invalidated for *this* intervening reason prior to the next scheduled renewal date.[7]

Cases Cited by the Plaintiff

1. *Twin City Fire Ins. Co. v. Alfa Mutual Ins. Co.*, 817 So.2d 687 (Ala. 2001).

The plaintiff cites this case with reference to general Alabama law regarding enforcement

---

[7] This is distinguished from argued invalidations based on the failure to notify of the other newspaper deliveries prior to July 2009 and from the carrying of property for a fee exclusion.

of policy language, ambiguities, etc. This court applies the principles of this case.

    2. *Alfa Life Ins. Corp. v. Lewis*, 910 So.2d 757 (Ala. 2005).

This case involves misrepresentations made by insureds. There were no such misrepresentations in this case.

    3. *Ex parte Quality Cas. Ins. Co.*, 962 So.2d 242 (Ala. 2006).

This case holds that misrepresentations in applications for the initial policy carry over to renewals. There have been no misrepresentations in this case. The plaintiff's reliance on this case is unfounded.

    4. *Johnson v. Allstate Ins. Co.*, 505 So.2d 362 (Ala. 1987).

This case stands for the proposition that coverage cannot be enlarged by waiver or estoppel. It apparently has more application to exclusions than to conditions or further requirements imposed on insureds.

    5. *Woodall v. Alfa Mut. Ins. Co.*, 658 So.2d 369 (Ala. 1995)

This case holds that waiver and estoppel are not applicable to unambiguous exclusions.

    6. *Liberty Mut. Fire Ins. Co. v. Parish*, 630 So.2d 437 (Ala. 1993).

Gives another reason why estoppel and waiver do not apply to exclusions.

    7. *See also McGee v. Guardian Life Ins. Co.*, 472 So.2d 993 (Ala. 1985) (regarding waiver).

Defendants' Positions

Defendants maintain that the "carrying property for a fee" exclusion is ambiguous and not applicable to their claims or otherwise enforceable. Defendants further maintain that the insured had completed delivery of newspapers at the time of the accident and thus could not be

considered to have been, at that time, carrying property for a fee, or to be subject to invalidation of coverage for lack of giving notice of a change.

Defendants also argue that the plaintiff waived any exclusion and/or condition of the policy by paying medical expenses after the accident and by receiving and retaining premiums for the policy. Defendants also argue that a commercial policy would not require a higher premium than the personal type policy that the insured had. [The court finds that a commercial policy would require a higher premium.]

The defendants also assert that the policy's notice to the plaintiff provisions are not enforceable. [The court agrees with this position.] The defendants may have also picked up on questions by the court and now argue that the Alabama statutes with regard to mandatory insurance and uninsured motorist have some relevance.

### Cases Cited By Defendants

1. *Blue Mound Farm Supply Co. v. Farmers' Mut. Fire Ins. Co.*, 219 N.W. 357, 360 (1928).

Cited for the proposition that an exclusion or change does not always avoid policy coverage but merely suspends it during the actual time of carrying.

2. *Trinity Universal Ins. Co. v. Daniel*, 202 S.W.2d 266, 267 (Tex. Civ. App. 1947)

Cited for similar reason as *Blue Mound.*

3. *Zurich Gen. Accident & Liab. Ins. Co. Ltd. Of Zurich, Switzerland v. Flickinger*, 33 F.2d 853, 856 (4th Cir. 1929).

> "And it is well settled that statements in an application for a policy which is renewed relate to the time when the original policy is issued; and, if they were true at that time, it is no defense that they may not have been true later or at the time of the renewal."

(Citations omitted).

[This court concludes that Gooden statements in the subject application have no significance in this case.]

4.  *Milbank Mut. Ins. Co. v. Wentz*, 352 F.2d 592, 596 (8th Cir. 1965).

*Milbank* does not involve an exclusion.

5.  *Preferred Risk Mut. Ins. Co. v. Hites*, 259 N.E. 2d 815, 820 (Ill. App. Ct. 1970).

This case has some relevance to plaintiff's position with regard to any duty of the insured to notify of changes. [This court agrees that the notification provisions of this policy are ambiguous in not stating matters relating to the required time of notice, nor the effect of a failure to notify.  Further, the provisions inappropriately put a burden on the insured to determine material risk and the effect on premiums.]

This the 8th day of August, 2011.

_____
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE